Dod v. Paul.

SAMUEL B. DOD et al.

v.

MIFFLIN PAUL et al.

P., having contracted to buy a tract of land, procured D. and S. to join him in his purchase. Each contributed one-third of the necessary moneys, and P. took the title in his own name, and declared a trust thereof, for himself and D. and S. The land was divided into numbered lots, and each of the associates, and one M., selected four lots for the purpose of improving them. The lots chosen by D., M. and S. adjoined; D. took the lots numbered 26, 27, 28 and 29; M. took 30, 31, 32 and 33, and S. took 34, 35, 36 and 37. They were then graded and built upon, under the direction of P. When the improvements approached completion, P., intending to convey to each, the lots selected and improved by him or her, made deeds, by which he conveyed to them the lots numbered from 27 to 38, inclusive of both (omitting 26, which had been improved by D., and including, in the deed to S., 38, which was unimproved). He subsequently divided the remainder of the lots between himself and D. and S., but yet retained 26 in his own name. He then entered the division, as it was intended and supposed to have been made, in his account-book, and therein made it appear that lots 26, 27, 28 and 29 had been conveyed to D., and that lots 34, 35, 36 and 37 had been conveyed to S., and

Dod *v.* Paul.

thereupon the declaration of trust was destroyed. Seventeen years after its improvement, it was discovered that lot numbered 26—of which D. for all that time had remained in peaceable possession—had not been conveyed to him, and that P., in making his first conveyances to D., M. and S. had commenced one lot too far north, and conveyed numbers 27, 28, 29 and 30 to D., and 31, 32, 33 and 34 to M., and 35, 36, 37 and 38 to S.—*Held*, that the deeds will be reformed to carry out the intention of the parties, and also that P. will be condemned in costs for having pertinaciously, and contrary to good faith, resisted the reformation.

On bill, answer, replication and proofs.

*Mr. John C. Besson,* for the complainants.

*Mr. John S. Applegate,* for the defendant Paul.

THE CHANCELLOR.

In June, 1869, the defendant Mifflin Paul purchased from Arthur V. Conover a tract of about seventy-one acres of land, lying between the Shrewsbury river and the ocean, at Seabright, Monmouth county. Before he took his deed and paid the consideration-money, he interested William W. Shippen and Samuel B. Dod in his venture, and obtained, from each of them, one-third of the consideration he was to pay for the land. The deed from Conover was to Paul alone, and he, to secure Messrs. Shippen and Dod, made a declaration in writing, that he held the land in trust for his and their benefit. The purpose of the parties was to divide the property into seaside lots, and sell the lots.

To accomplish this purpose, they caused the land to be surveyed and then mapped into lots; procured the Long Branch and Seashore Railroad Company to locate a depot at about the centre of the tract, and agreed that they would each take four of the lots and grade and build upon them for their individual use, and thus start a settlement on the lands. At an appointed time the three gentlemen and one of the complainants, Mrs. Martha B. Stevens, who is a sister of Mr. Dod, met upon the property, and selected four lots each, for the purpose of improving them. As Mrs. Stevens was to purchase the lots she selected, she was allowed to make the first choice. After her selection, Mr. Shippen took the four adjoining lots immediately north, and Mr. Dod took the

four lots adjoining immediately south, of those which Mrs. Stevens had selected. At the same time Mr. Paul chose four adjoining lots several hundred feet south of Mr. Dod's location.

Shortly after the selections had been made, the twelve lots, chosen by Mrs. Stevens and Messrs. Dod and Shippen, were graded and built upon, at considerable expense, under the personal supervision of Mr. Paul. The lots thus improved and built upon for Mr. Dod, were numbered 26, 27, 28 and 29; and the lots improved and built upon for Mrs. Stevens, were numbered 30, 31, 32 and 33; and the lots improved and built upon for Mr. Shippen, were numbered 34, 35, 36 and 37. Upon lot numbered 26, Mr. Dod caused an ice-house to be erected and had Mr. Paul personally superintend that work for him.

In October of the same year, when the improvements were well advanced, it was proposed that deeds for the improved lots should be given by Mr. Paul to the persons to whom they respectively belonged, and accordingly three deeds were prepared, under the supervision of Mr. Dod, which described the improved property by reference to the map of the land. Mr. Dod did not know the map numbers of the improved lots, and for that reason left a blank space in the descriptions, for the insertion of the proper numbers, and sent the deeds to Mr. Paul, with the request that he should properly fill the blanks, and then execute the deeds.

With his own hand, Mr. Paul filled the blank in the deed to Mr. Dod with the lot numbers 27, 28, 29 and 30, and the blank in the deed to Mrs. Stevens with the lot numbers 31, 32, 33 and 34, and the blank in the deed to Mr. Shippen with the lot numbers 35, 36, 37 and 38. He thus included in the deeds lot numbered 38, which had not been graded and improved, and left out lot numbered 26, which had been graded, and upon which Mr. Dod's ice-house had been erected.

About this time, Mr. Dod told Mr. Paul that he, Dod, wished two more lots immediately south of the lots he had improved, to build upon for his mother, and thereupon, with the consent of Messrs. Paul and Shippen, he graded, and built a house upon lots numbered 24 and 25.

Dod *v.* Paul.

In January, 1872, after several lots had been sold, the associates agreed to divide their holdings, and thereupon Mr. Paul conveyed to Mr. Dod twenty-eight lots, including the lots numbered 24 and 25, which Mr. Dod had built upon for his mother. At the same time he conveyed twenty-eight lots to Mr. Shippen, including, as one of the twenty-eight, lot numbered 38, which he had already, in 1869, conveyed to Mr. Shippen.

According to the deeds, Mr. Shippen got, in all, thirty-one lots, Mr. Dod got thirty-two lots and Mr. Paul got thirty-four lots. Lot numbered 38 was twice deeded to Mr. Shippen; first in 1869, and again, at the division, in 1872.

By agreement with his associates, Mr. Paul kept an account of the dealings with reference to this land, in a book provided for the purpose. In this book, under date of January 30th, 1872, he enumerated, in his own handwriting, the lots apportioned to each of the associates. Among those there enumerated as belonging to Mr. Dod is lot numbered 26, and among those there enumerated as belonging to Mr. Shippen is lot numbered 34.

At the division of the lots in 1872 the declaration of trust was surrendered to Mr. Paul, and was by him afterwards destroyed.

In June, 1876, Mr. Shippen conveyed, to Mrs. Mary P. Lewis, the lot numbered 34, and afterwards Mrs. Lewis erected an expensive cottage upon it.

In November, 1881, Mr. Dod conveyed a portion of lot numbered 26, to the Seabright Improvement Company, and in 1886 that company had its title to the lands so conveyed to it examined, and then discovered that the lot 26 had never been deeded to Mr. Dod. Shortly after this discovery, the defendant Paul notified Mr. Dod that a portion of the porch of Dod's cottage encroached upon his, Paul's, property, the lot numbered 26. This notice led to an examination of the conveyances and revealed the situation above stated.

The complainants, and Mr. Shippen, have remained in undisturbed and unquestioned possession of the properties, which were improved by them respectively, since the improvements were made. Mr. Dod, for seventeen years, has openly claimed to be

20

Dod v. Paul.

the owner of lot numbered 26, and, during that time, although Mr. Paul has constantly witnessed Mr. Dod's acts of ownership over that lot, he has failed to assert any claim to it.

I think that the evidence establishes, in the clearest and most satisfactory manner, that it was the intention of the parties to the deeds of 1869, that lots numbered 26, 27, 28 and 29 were to be conveyed to Mr. Dod, and that lots numbered 30, 31, 32 and 33 were to be conveyed to Mrs. Stevens, and that lots numbered 34, 35, 36 and 37 were to be conveyed to Mr. Shippen. The improvement of these lots, under the supervision of Mr. Paul, according to the apportionment of them, the entry of the total division of the lots by Mr. Paul in the account-book, wherein he designated lot 26 as belonging to Mr. Dod and lot 34 as belonging to Mr. Shippen, the double conveyance of lot 38 to Mr. Shippen, the fact that but thirty-one lots were conveyed to Mr. Shippen, while thirty-two were conveyed to Mr. Dod, and thirty-four remained to Mr. Paul, and the continued peaceable possession of lot 26, by Mr. Dod, for seventeen years, are circumstances which bring my mind strongly to the conclusion that, by an innocent mistake, wrong lot numbers were inserted in the deeds of 1869. The only other interpretation, that this concatenation of circumstances would bear, is that which would charge Mr. Paul with fraud and concealment, but that I dismiss as untenable under the evidence in the case. If it had been his design to fraudulently keep lot 26 out of the division, so that it would ultimately be his property, free from the trust he had declared, he would hardly have permitted Mr. Dod to remain in peaceable possession of it for fourteen years after the declaration of trust had been destroyed.

The complainants are entitled to the relief they ask. I will decree the reformation they seek, and, following the precedent established in *Loss* v. *Obry, 7 C. E. Gr. 52,* I will condemn the defendant Paul in costs, because, when the mistake was brought to his notice, he refused to correct it, and pertinaciously defended this suit, notwithstanding the mistake was clear, and good faith demanded its correction.